IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 5:21-CV-245-D

| | |
|---|---|
| GLORIA CARR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

On June 7, 2021, Gloria Carr ("Carr" or "plaintiff"), an African-American woman, filed a complaint against the United States, Lloyd J. Austin, Secretary of Defense, and Christine E. Wormuth, Secretary of the Army, (collectively, "defendants") alleging race discrimination, sex discrimination, retaliation, and constructive discharge under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq. [D.E. 1]. On August 12, 2021, defendants moved to dismiss the complaint for failure to state a claim [D.E. 8] and filed a memorandum in support [D.E. 9]. See Fed. R. Civ. P. 12(b)(6). On September 1, 2021, Carr filed an amended complaint [D.E. 10] and responded to defendants' motion to dismiss [D.E. 11].

On September 29, 2021, defendants moved to dismiss Carr's amended complaint for failure to state a claim [D.E. 13] and filed a memorandum [D.E. 14]. See Fed. R. Civ. P. 12(b)(6). On October 19, 2021, Carr responded in opposition [D.E. 15] and filed a memorandum [D.E. 16]. On November 1, 2021, defendants replied [D.E. 17].

On March 1, 2022, the court denied as moot defendants' motion to dismiss and granted in part and denied in part defendants' motion to dismiss Carr's amended complaint [D.E. 18]. The only

claim that survived was Carr's retaliation claim. See id. at 4–5. On November 28, 2022, defendants moved for summary judgment [D.E. 31] and filed a memorandum, a statement of material facts, and an appendix [D.E. 32, 33, 34]. On January 9 and 10, 2023, Carr responded in opposition [D.E. 40] and filed a memorandum, a statement of material facts, and an appendix in support [D.E. 39, 41, 42]. On January 23, 2023, defendants replied [D.E. 45] and filed a statement of material facts and an appendix [D.E. 46, 47].[1] As explained below, the court grants defendants' motion for summary judgment.

I.

The Army employed Carr as a Supervisory Contract Specialist and Director at Contracting Command, Mission and Installation Contracting Command ("MICC"), 419th Contracting Support Brigade ("CSB") at Fort Bragg, North Carolina. See Am. Compl. [D.E. 10] ¶¶ 8–21; [D.E. 33] ¶ 1; [D.E. 41] ¶ 1. As a Supervisory Contract Specialist and Director, Carr's responsibilities included supervising 80–100 people and being responsible for contracts totaling between $3 billion and $16 billion per year. See Am. Compl. ¶ 57. Jerry David King ("King") was Carr's first-line supervisor. See id. at ¶ 25. Colonel Carol Tschida ("Colonel Tschida") was Carr's second-line supervisor. See id. From December 2013 through July 2017, Brigadier General Jeff Gabbert ("General Gabbert")

---

[1] Under Local Civil Rule 56.1(a)(2), each numbered paragraph in defendants "statement of material facts [is] deemed admitted for the purposes of [Carr's] motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civil Rule 56.1(a)(2); see Williamson v. Bridgestone Ams., Inc., __ F. Supp. 3d __, __, 2022 WL 4084413, at *3 (E.D.N.C. Sept. 6, 2022); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113, 2017 WL 1030706, at *1 n.1 (E.D.N.C. May 15, 2017) (unpublished); see also Fed. R. Civ. P. 56(e)(2).

2

was Commanding General of Mission and Installation Contracting Command, Headquartered at Joint Base San Antonio, Fort Sam Houston, Texas. See [D.E. 33] ¶ 2; [D.E. 41] ¶ 2.

The parties dispute various issues that allegedly arose in 2015. Carr contends that King made discriminatory statements to her and that King and Colonel Tschida created a hostile work environment. See [D.E. 41] ¶¶ 8–62. The court, however, has dismissed Carr's hostile work environment claim. See [D.E. 18] 2–3. Moreover, defendants respond that Carr created a hostile work environment, that employees in her office complained and asked to be moved, that Carr could not handle her workload, and that Carr had numerous performance issues. See [D.E. 33] ¶¶ 7–62. In any event, these disputes are not material to Carr's retaliation claim.

On January 25, 2016, Colonel Tschida (with the approval of General Gabbert) offered Carr a Procurement Analyst Technical Director position ("Technical Director position"). Compare [D.E. 33] ¶ 14 with [D.E. 41] ¶ 14. Carr did not immediately accept the position, and on January 27, 2016, the office of the Chief Counsel notified King and Colonel Tschida that they should prepare to do a management-directed reassignment of Carr if Carr declined the Technical Director position. Compare [D.E. 33] ¶ 18 with [D.E. 41] ¶ 18; see [D.E. 34-3] 3. On January 27, 2016, Carr declined the offer to transfer to the Technical Director position. See [D.E. 34-3] 3.

In March 2016, Carr remained as a Supervisor Contract Specialist and Director. On March 29, 2016, General Gabbert decided to notify Carr that he was reassigning her to the Technical Director position. Compare [D.E. 33] ¶ 47 with [D.E. 41] ¶ 47; see [D.E. 34-8]. On Thursday, March 31, 2016, General Gabbert instructed his office assistant, Velia Anstadt, to schedule a meeting with Carr to take place on Friday, April 1, 2016, so that General Gabbert could inform Carr of his recent decision to assign her to the position of Technical Director. See [D.E. 34-8] 2; compare [D.E. 33] ¶¶ 47–48 with [D.E. 41] ¶¶ 47–48. Anstadt could not reach Carr on the telephone, sent an email

3

to Carr informing her that General Gabbert wanted to schedule a meeting with Carr on Friday, April 1, 2016, and enlisted King to help contact Carr. Compare [D.E. 33] ¶¶ 48–50 with [D.E. 41] ¶¶ 48–50; see [D.E. 34-3, 34-4]. King called Carr on her personal cell phone and directed Carr to schedule a meeting with General Gabbert for Friday, April 1, 2016. Compare [D.E. 33] ¶ 51 with [D.E. 41] ¶ 51; see [D.E. 34-3] 6. On Friday, April 1, 2016, Carr submitted a request for sick leave, declined to schedule a meeting with General Gabbert for that day, scheduled the meeting with General Gabbert for Monday, April 4, 2016, and took a day of sick leave on April 1, 2016. Compare [D.E. 33] ¶ 55 with [D.E. 41] ¶ 55. On April 1, 2016, Carr also scheduled an EEO appointment for Friday, April 4, 2016. Compare [D.E. 33] ¶ 56 with [D.E. 41] ¶ 56.

On April 4, 2016, Carr attended a meeting at the EEO office. After that meeting, Carr then met with General Gabbert. Compare [D.E. 33] ¶¶ 57–58 with [D.E. 41] ¶¶ 57–58. At the meeting with General Gabbert, General Gabbert notified Carr that he was reassigning her effective immediately to the Technical Director position. Compare [D.E. 33] ¶¶ 58–59 with [D.E. 41] ¶¶ 58–59. As Technical Director, Carr would have "reviewed contracts prepared by other specialists throughout the 419th Contracting Support Brigade." [D.E. 41] ¶ 58. On April 4, 2016, Carr retired. See [D.E. 33] ¶ 63; [D.E. 41] ¶ 63.

In Carr's amended complaint, Carr alleges that defendants retaliated against her after she "engaged in EEO activity on April 4, 2016 when she had her appointment with the EEO office." Am. Compl. ¶ 49. Referring to the April 4, 2016 meeting, Carr alleges that "[t]he retaliating officials knew of the protected activity in that prior to her appointment, she emailed COL Tschida and Mr. King to let them know she had an EEO appointment that morning." Id. at ¶ 50. Carr also alleges that "Mr. King acknowledged during the EEO investigation, that he learned on April 1, 2016, that

4

[Carr] had a scheduled appointment with the EEO office." Id.[2] Carr alleges that she was "subjected to adverse treatment" after her EEO meeting on April 4, 2016, which consisted of being moved "from her position as Supervisory Contract Specialist and Director, NH-1102-04, MICC, Fort Bragg . . . to the position of [Technical Director], 419th CSB, Fort Bragg, North Carolina." Id. at ¶ 51.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

---

[2] King contends that he mistakenly stated during the EEO investigation that he learned about Carr's EEO meeting on April 1, 2016, and that he did not learn about Carr's EEO meeting until April 4, 2016. See [D.E. 34-3] ¶¶ 29–30. The dispute is not material.

5

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

Carr does not have direct evidence of retaliation and proceeds under the McDonnell Douglas burden-shifting framework. To establish a prima facie case of retaliation, Carr must prove that (1) she engaged in protected activity under Title VII, (2) her employer took some action against her that a reasonable employee would find materially adverse, and (3) her employer took the adverse action because of the protected activity. See Walton v. Harker, 33 F.4th 165, 177 (4th Cir. 2022); McIver v. Bridgestone Ams., Inc., 42 F.4th 398, 411 (4th Cir. 2022); Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021); Sempowich v. Tactile Sys. Tech., Inc., 19 F.4th 643, 653 (4th Cir. 2021); Kitlinski v. United States Dep't of Justice, 994 F.3d 224, 232 (4th Cir. 2021); Wilcox v. Lyons, 970 F.3d 452, 460 (4th Cir. 2020); Evans v. Int'l Paper Co., 936 F.3d 183, 195 (4th Cir. 2019); Perkins v. Int'l Paper Co., 936 F.3d 196, 213 (4th Cir. 2019); Ray v. Int'l Paper Co., 909 F.3d 661, 667 (4th Cir. 2018); Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. 2018); Strothers v. City of Laurel, 895 F.3d 317, 327 (4th Cir. 2018); Abilt v. CIA, 848 F.3d 305, 315 n.9 (4th Cir. 2017); Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 217 (4th Cir. 2016); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 253 (4th Cir. 2015); Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 429 (4th Cir. 2015); DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Boyer-Liberto v. Fontainbleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus.,

6

Inc., 711 F.3d 401, 410 (4th Cir. 2013); see also Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67–70 (2006).

As for whether Carr engaged in protected activity, defendants concede that Carr engaged in protected activity when she attended an EEO appointment on April 4, 2016. See [D.E. 32] 7–9. Defendants, however, argue that any other alleged protected activity, such as Carr's alleged meetings before April 4, 2016, with King, Colonel Tschida, or General Gabbert, was not protected activity and, even if it were, Carr did not identify that activity as protected activity in Carr's EEOC charge, her complaint, or her amended complaint. Thus, according to the defendants, Carr cannot rely on that activity because she failed to administratively exhaust any retaliation claim arising from that alleged protected activity. See id.; [D.E. 45] 1–6. Carr responds that she engaged in protected activity by complaining about alleged discriminatory actions towards her and others to Colonel Tschida, King, and General Gabbert from August to December 2015 and to the EEO office on March 17, 2016, and April 1, 2016. See [D.E. 39] 7–9.

Title VII protects two kinds of activities: opposition and participation. See Netter v. Barnes, 908 F.3d 932, 937–38 (4th Cir. 2018); Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). "[O]ppositional activity must be directed to 'an unlawful employment practice' under Title VII . . . ." DeMasters, 796 F.3d at 417; see Netter, 908 F.3d at 937–38; Boyer-Liberto, 786 F.3d at 282; Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); Laughlin, 149 F.3d at 259. The opposition clause applies when an employee "opposes not only employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful [under Title VII]." DeMasters, 796 F.3d at 417 (cleaned up); see Netter, 908 F.3d at 937–38; Boyer-Liberto, 786 F.3d at 282. As for the participation clause, it protects making a charge, testifying,

7

assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C. § 2000e-3(a); Laughlin, 149 F.3d at 259.

Carr's amended complaint alleges that defendants retaliated against her after she "engaged in EEO activity on April 4, 2016 when she had her appointment with the EEO office." Am. Compl. ¶ 49. Referring to the April 4, 2016 meeting, Carr alleges that "[t]he retaliating officials knew of the protected activity in that prior to her appointment, she emailed COL Tschida and Mr. King to let them know she had an EEO appointment that morning." Id. at ¶ 50. Carr also alleges that "Mr. King acknowledged during the EEO investigation, that he learned on April 1, 2016 that [Carr] had a scheduled appointment with the EEO office." Id. Carr alleges that she was "subjected to adverse treatment" after this meeting with the EEO on April 4, 2016, which consisted of being moved "from her position as Supervisory Contract Specialist and Director, NH-1102-04, MICC, Fort Bragg ... to the position of [Technical Director], 419th CSB, Fort Bragg, North Carolina." Id. at ¶ 51.

The only alleged protected activity that Carr included in her amended complaint was scheduling her EEO meeting on April 1, 2016, and attending the EEO meeting on April 4, 2016. Carr does not contend in her amended complaint that she engaged in any other protected activity. See Am. Compl. ¶¶ 48–49. Carr never attempted to amend her complaint to add this new alleged protected activity that allegedly occurred before April 1, 2016. Carr cannot amend her claims or amend her complaint via summary judgment briefing. See, e.g., U.S. ex rel. Carter v. Halliburton Co., 866 F.3d 199, 210 n.6 (4th Cir. 2017); Murray Energy Corp. v. Admin. of Envt'l Prot. Agency, 861 F.3d 529, 537 n.5 (4th Cir. 2017); vonRosenberg v. Lawrence, 849 F.3d 163, 167 n.1 (4th Cir. 2017); S. Walk at Broadlands Homeowner's Ass'n, Inc., v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013); Barclay White Skanska, Inc. v. Battelle Mem. Inst., 262 F. App'x 556, 563 (4th Cir. 2008) (collecting cases); see also Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599,

8

617 (4th Cir. 2009) (collecting cases); Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009); Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); Shinaberry v. Town of Murfreesboro, No. 2:17-CV-7, 2019 WL 5446712, at *5 n.4 (E.D.N.C. Oct. 23, 2019) (unpublished); Optima Tobacco Corp. v. Flue-Cured Tobacco Growers, Inc., No. 5:16-CV-889, 2019 WL 4858848, at *8 (E.D.N.C. Sept. 30, 2019) (unpublished); United States for Graybar Elec. Co., Inc. v. TEAM Constr., LLC, 275 F. Supp. 3d 737, 748 n.3 (E.D.N.C. 2017); Gilbert v. Deutsche Bank Tr. Co. Ams., No. 4:09-CV-181, 2017 WL 1012981, at *2 n.2 (E.D.N.C. Mar. 14, 2017) (unpublished); Hexion Specialty Chems., Inc. v. Oak–Bark Corp., No. 7:09-CV-105, 2011 WL 4527382, at *7 (E.D.N.C. Sept. 28, 2011) (unpublished).

Alternatively, the court declines to consider these new contentions about alleged protected activity before April 1, 2016, because Carr failed to administratively exhaust them. Before a person may file a claim under Title VII, she must file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e–5(f)(1). An EEOC charge suffices "only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (quotation omitted); see Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005). Moreover, the content of the EEOC charge determines the scope of plaintiff's right to maintain a Title VII claim in court. See, e.g., Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see Miles, 429 F.3d at 491. "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the

9

formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Fort Bend Cnty. v. Davis, 139 S. Ct. 1843 (2019). The same principle applies with respect to a plaintiff who files an EEOC charge that alleges retaliation with respect to one allegedly protected activity, but then seeks to expand the formal litigation claim to a separate allegedly protected activity. See Chacko, 429 F.3d at 509. The rationale behind these principles concerning the scope of an EEOC charge relates to providing fair notice to an employer concerning a charge and to permitting the EEOC to investigate and (if appropriate) resolve the dispute without a lawsuit. See, e.g., id. at 508–09; Miles, 429 F.3d at 491.

Although Carr's amended complaint mentions some of the allegedly discriminatory statements her supervisors allegedly made in meetings from January 2015 until April 2016, Carr only alleges protected activity and retaliation based scheduling her EEO meeting on April 1, 2016, and attending it on April 4, 2016. See Am. Compl. ¶¶ 49–51. Therefore, the only potential retaliation claim that Carr's amended complaint contains is a retaliation claim arising from this alleged protected activity.

As for the adverse action requirement, defendants argue that Carr's reassignment was not adverse action because there was no change to her hours, location, pay, benefits, seniority, or advancement opportunities. See [D.E. 32] 9–12; [D.E. 45] 6. Carr responds that her reassignment was an adverse action because it was a demotion that changed her job title and supervisory authority. See [D.E. 39] 13–14.

Under Title VII, material adversity "means [that an employer's actions] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68. Title VII does not redress "trivial harms" or provide a "general civility code for the

10

American workplace." Id. (quotation omitted); see Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). Rather, Title VII's anti-retaliation provision prohibits an employer's actions that "are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." White, 548 U.S. at 68 (quotation omitted); see Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997). The court analyzes material adversity from the perspective of an objective, reasonable employee, and ignores "a plaintiff's unusual subjective feelings." White, 548 U.S. at 68–69; see Bryant, 288 F.3d at 134–35. Additionally, the court must account for the "particular circumstances" surrounding the alleged retaliation. White, 548 U.S. at 69.

Reassignment—and a corresponding change in working conditions—can constitute an adverse action, but only if it has a "significant detrimental effect" on the plaintiff. Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999); see Adams, 789 F.3d at 429–30; Williams v. Brunswick Cnty. Bd. of Educ., 725 F. Supp. 2d 538, 547 (E.D.N.C. 2010), aff'd, 440 F. App'x 169 (4th Cir. 2011) (per curiam) (unpublished). When analyzing a transfer or reassignment, the "mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004); see Boone, 178 F.3d at 256–57. "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action." Boone, 178 F.3d at 256–57.

The court need not resolve the parties' dispute about whether Carr's reassignment was adverse action. Instead, the court turns to but-for causation.

Defendants argue that Carr presents no evidence that her protected activity on April 1, 2016 (in scheduling the EEO meeting), or April 4, 2016 (in having the EEO meeting), was the but-for cause of General Gabbert's decision to reassign her. See [D.E. 32] 12–16; [D.E. 45] 6–7. In

11

support, defendants note that General Gabbert decided to reassign Carr before Thursday, March 31, 2016, and attempted to reach Carr on March 31, 2016, to schedule a meeting for Friday, April 1, 2016, to inform Carr about his decision. See [D.E. 34-8] 2–5. Despite various attempts to reach Carr on March 31, 2016, General Gabbert could not reach Carr to schedule the meeting and communicate his decision on Friday, April 1, 2016. See [D.E. 32] 12–16; [D.E. 45] 6–7; [D.E. 34-3, 34-4, 34-8]; compare [D.E. 33] ¶¶ 47–55 with [D.E. 41] ¶¶ 47–55. Carr responds that the close temporal proximity between her protected activity on April 1, 2016, and the adverse action on April 4, 2016, are enough to establish a genuine issue of material fact about causation. See [D.E. 39] 8–9; Jacobs v. N.C. Admin. Off. of the Courts, 780, F.3d 562, 579 (4th Cir. 2015).

"Retaliation claims . . . require the employee to show that retaliation was a but-for cause of a challenged adverse employment action." Guessous, 828 F.3d at 217 (quotation and citation omitted); see Lashley v. Spartanburg Methodist Coll., 66 F.4th 168, 176 (4th Cir. 2023); Fry v. Rand Constr. Corp., 964 F.3d 239, 246 (4th Cir. 2020); Strothers, 895 F.3d at 335–36; Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 900 (4th Cir. 2017); Huckelba v. Deering, No. 5:16-CV-247, 2016 WL 6082032, at *3 (E.D.N.C. Oct. 17, 2016) (unpublished). "Naked allegations of a causal connection between plaintiff's protected activity and the alleged retaliation do not state a plausible Title VII claim." Huckelba, 2016 WL 6082032 at *3. Furthermore, the employee must demonstrate temporal proximity between the alleged retaliation and the protected activity. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001); Brown v. Wake Cnty. Gov., No. 5:16-CV-806, 2017 WL 2982971, at *4 (E.D.N.C. July 12, 2017) (unpublished); Huckelba, 2016 WL 6082032, at *4.

But-for causation "requires that a plaintiff demonstrate that the decisionmaker imposing the adverse action have actual knowledge of the protected activity." Roberts, 998 F.3d at 125. A

12

decisionmaker obviously cannot be motivated by something that the decisionmaker did not know. See, e.g., Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998), abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006); Ross v. Comms. Satellite Corp., 759 F.2d 355, 365 n.9 (4th Cir. 1985).

Even viewing the record in the light most favorable to Carr, Carr's protected activity was not the but-for cause of General Gabbert's decision to reassign her. General Gabbert decided before March 31, 2016, to reassign Carr to the Technical Director position. See [D.E. 34-8] ¶¶ 8–9, 12–25. General Gabbert instructed Anstadt on March 31, 2016, to contact Carr and schedule a meeting with Carr on April 1, 2016, so that he could inform Carr of his decision. See id. Carr then avoided meeting with General Gabbert until April 4, 2016, and scheduled an EEO meeting on April 1, 2016, to take place on April 4, 2016. At the meeting on April 4, 2016, General Gabbert notified Carr that he was reassigning her effective immediately. Compare [D.E. 33] ¶¶ 58–59 with [D.E. 41] ¶¶ 58–59.

Even viewing the record in the light most favorable to Carr, Carr's protected activity on April 1, 2016, occurred after General Gabbert made the decision to reassign Carr, and Carr has no evidence that General Gabbert knew about her protected activity before making his decision. See [D.E. 34-8] ¶¶ 8–9, 12–25; see also [D.E. 33] ¶¶ 18–24, 47–60; [D.E. 41] 18–24, 47–60. Because General Gabbert decided to reassign Carr before Carr engaged in her protected activity on April 1, 2016, it is impossible that Carr's protected activity was the but-for cause of her reassignment. See Conrad v. CSX Transp., Inc., 824 F.3d 103, 108 (4th Cir. 2016); Lalanne v. Begin Managed Programs, 346 F. App'x 666, 667 (2d Cir. 2009) (unpublished); Jefferies v. UNC Reg'l Physicians Pediatrics, 392 F. Supp. 3d 620, 629 (M.D.N.C. 2019); Supinger v. Virginia, 167 F. Supp. 3d 795, 812 (W.D. Va. 2016); accord. Clark Cnty. School Dist., 532 U.S. at 272; Roberts, 998 F.3d at 125; Dowe, 145 F.3d at 656; Ross, 759 F.2d at 365 n.9; Swerdloff v. Green Spring Health Servs., Inc., 139 F.3d 892, 1998

13

WL 165783, at *4 (4th Cir. Apr. 2, 1998) (unpublished). Thus, the court grants defendants' motion for summary judgment.

In opposition, Carr cites Jacobs. See Jacobs, 780 F.3d at 571. Jacobs, however, provides no comfort to Carr. In Jacobs, the protected activity occurred before the adverse action, and the decisionmaker taking the adverse action knew about the protected activity before taking the adverse action. See id.

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 31]. Defendants may file a motion for costs in accordance with the Federal Rules of Civil Procedure and the court's local rules. The clerk shall close the case.

SO ORDERED. This 24 day of May, 2023.

JAMES C. DEVER III
United States District Judge